**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **No. 3:19-cr-65-VLB-12** |
| **v.** | : | |
| | : | **May 26, 2020** |
| **JERROD STEELE** | : | |
| | : | |

**MEMORANDUM OF DECISION DENYING**
**DEFENDANT'S MOTION TO REDUCE SENTENCE [DKT. 597]**

Before the Court is Jerrod Steele's ("Defendant") motion for reduction of sentence. [Mot., Dkt. 597]. Mr. Steele moves for the Court "to reduce [his] sentence to something other than time served." [*Id.* at 1]. Mr. Steele argues "extraordinary and compelling" reasons justify his request because he has a clean institutional record, a record of rehabilitation, and his incarceration during the COVID-19 pandemic has been overly punitive. The Government objects, arguing that Mr. Steele has not satisfied the exhaustion requirements, has not established that the COVID-19 pandemic presents a particularized threat to him that is higher in the facility than if he were released, the Bureau of Prisons ("BOP") has mitigated the risk of infection, and the 18 U.S.C. § 3553(a) factors and Mr. Steele's danger to the community support continued detention. [Opp., Dkt 605]. Mr. Steele filed two replies; the first arguing that he has exhausted his administrative remedies or in the alternative, exhaustion would be futile, and the second providing evidence that he submitted another request to the warden of FCI Schuylkill requesting relief under 18 U.S.C. § 3582.

For the following reasons, the Court denies Mr. Steele's motion for reduction of sentence.

I.      BACKGROUND

A.  <u>Case Background</u>

On July 21, 2019, Mr. Steele pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).     [Dkt. 266].   In the plea agreement, Mr. Steele agreed and acknowledged that the quantity of cocaine, which was part of Mr. Steele's relevant and readily foreseeable conduct, was at least 400 grams but less than 500 grams. [*Id.*].

On November 7, 2019, Mr. Steele appeared before the Court for sentencing. [Dkt. 280 (Audio)].   At sentencing, the Court adopted the facts provided in the presentence report ("PSR") as its findings of fact.   *Id.*   The PSR provides that Mr. Steele has six prior criminal convictions: a 2009 assault, a 2009 conspiracy to commit robbery, a 2009 burglary, a 2015 assault, a 2018 evading responsibility and physical injury or property damage, and a 2018 'run from police.'   [PSR at ¶¶ 31–36, Dkt. 266].   Mr. Steele was incarcerated for approximately 6 of the 10 years between 2009 and 2019.   [*Id.*].   His longest sentence served prior to the underlying case was 5 years.   [*Id.* at ¶¶ 31–32].

For the underlying conviction, the Court sentenced Mr. Steele to serve 70 months of imprisonment, to be followed by 3 years supervised release.   *Id.*   He is

currently serving this sentenced in FCI Schuylkill in Minersville, PA.  He has served approximately 25 months of his 70-month sentence.[1]

B. <u>Mr. Steele's Health</u>

This is Mr. Steele's second motion brought under section 3582.  The first motion sought immediate release arguing that Mr. Steele's underlying health conditions put him at an increased risk of severe illness or death if he contracted COVID-19.  [Dkt. 410].  In the Court's decision on the first motion, it found that Mr. Steele presented evidence showing that he suffered from chronic medical conditions that elevated his risk of becoming seriously ill from COVID-19.  [Dkt. 466 at 6].  Specifically, Mr. Steele presented a letter from a physician who reported that "Mr. Steele suffers from hypertension, asthma, dyslipidemia, obesity (with a BMI of 31.3) and post-operation small bowel resection."  *Id.*

Following the Court's decision on his first motion, Mr. Steele contracted COVID-19.  [Mot. at 10].  Though Mr. Steele had a few of the medical conditions the CDC found "can" make him more likely to get severely ill, he did not get severely ill.[2]  [*Id.*].

Mr. Steele reports that he is fully inoculated from COVID-19, having received one dose of the COVID-19 vaccine on March 30, 2021.  [Mot. at 11].   To the extent

---

[1] Mr. Steele has been detained since his arrest on April 25, 2019.  [PSR at 1].

[2] Mr. Steele's motion indicates he has provided medical records reporting the symptoms he experienced during his COVID-19 infection.  However, the citations to the medical records; [Dkt. 599]; do not contain the information the motion claims it does.   Thus, the Court is unable to verify what symptoms Mr. Steele reports having during his COVID-19 infection.  At the very least, based on the claims in the motion, he did not experience severe illness or death.

3

he received a two-dose vaccine, the Court infers that he received the second dose at or around the prescribed time.

### C. COVID-19 Confinement Conditions

Mr. Steele has been confined at FCI Schuylkill. [Mot. at 8]. Mr. Steele's motion states that the conditions at FCI Schuylkill for the last year have been extraordinarily harsh. [*Id.*]. The motion provides that at the height of the COVID-19 pandemic, hundreds of inmates tested positive for the virus and that FCI Schuylkill is in the top 12% of all BOP facilities in terms of number of inmates who tested positive for the virus. [*Id.*]. Further, the motion states that Mr. Steele reports being subject to frequent quarantines and isolation from fellow inmates, received limited recreation time, had difficulty staying in touch with family, access to showers were limited to three showers per week during certain unspecified periods, and he was required to eat, workout, and pray in the same location. [*Id.* at 8–9]. These claims of confinement conditions were not quantified or attested to in a sworn affidavit by Mr. Steele, nor otherwise supported by evidence. The motion also claims that Mr. Steele experienced more stress during the pandemic because of his risk of severe illness if he contracts COVID-19. [*Id.* at 9–10]. This claim was also unsupported by an affidavit, nor otherwise supported by evidence. The Court gives credence to these claims in ruling on the motion.

According to the BOP website, FCI Schuylkill reports a total of 540 inmates recovered from COVID-19 since the start of the pandemic.[3]  No inmates died from COVID-19 while at FCI Schuylkill.[4]

D. <u>Rehabilitation</u>

During Mr. Steele's current period of incarceration, he has not received any disciplinary tickets; [Mot. at Ex. B]; which the motion highlights is a departure from his prior periods of imprisonment.  The motion provides that during the pandemic, Mr. Steele completed several programs at FIC Schuylkill.  [Mot. at Ex. C].  He completed the national parenting program, inside out dad, and a program labeled "phase one complete."  [*Id.*].  He also completed education courses in "ACE Climate Change," "ACE Manifest Destiny," and "FCI Release Requirements."  [Mot. at Ex. B].

He is currently working as an orderly at FCI Schuylkill.  [Mot. at Ex. B].  A review report of his work assignment provides that he "maintains satisfactory work evaluations."  [*Id.*].

II.    LEGAL STANDARD

As a general rule of finality courts may not modify sentences once imposed. The court may not modify a term of imprisonment once it has been imposed except as prescribed by law, including Rule 35 of the Federal Rules of Criminal Procedure. 18 U.S.C. 3582(c). Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such

---

[3] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited May 26, 2021).
[4] *Id.*

requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*   The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  18 U.S.C. § 3583(c)(1)(A). "The defendant bears the burden of showing that [he] is entitled to a sentence reduction." *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing to *United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020)).

III.   ANALYSIS

A. <u>Exhaustion Requirement</u>

Section 3582 authorizes a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  "Section 3582(c)(1)(A)

imposes a statutory exhaustion requirement that must be strictly enforced." *United States v. McCarthy*, 453 F. Supp. 3d 520, 524 (D. Conn. 2020) (internal citation marks omitted).

Attached to Mr. Steele's motion is a denial of compassionate release by the warden of FCI Schuylkill from April 2020.  This was the same denial letter attached to Mr. Steele's first motion for compassionate release that was denied.  The Government argues in its opposition that the April 2020 letter does not establish proof of exhaustion because the second motion is a successive motion.  Mr. Steele initially argued that the April 2020 letter did satisfy the exhaustion requirement and, even if it did not, the exhaustion requirement should be excused because it would be futile.  Following the filing of the motion and his first reply memorandum, Mr. Steele submitted a supplemental memorandum reporting that he submitted a request on April 8, 2021 to the warden of FCI Schuylkill requesting a sentence reduction.  [Supp. Reply, Dkt. 613].  The request briefly discusses the medical conditions Mr. Steele suffers from and his position that such medical conditions put him at an increased risk of death from COVID-19.  [*Id.*].  The Warden denied the request, where he indicated, among other things, that "inmate Steele is healthy, stable, and is currently COVID-19 recovered[,]" "he is not suitable for priority placement on Home Confinement[,]" and "[s]pecifically, his medium security classification, and recidivism score of "HIGH" disqualifies him from priority placement consideration." [*Id.*].

Section 3582 on its face authorizes a court to reduce a term of imprisonment "upon motion of the defendant *after* the defendant has fully exhausted

administrative rights . . . ." (Emphasis added). Meaning, the defendant should exhaust administrative rights _before_ bringing a motion before the court. Mr. Steele only rectified the exhaustion requirement after filing his motion, not before as required under the plain language of the statute. Thus, his motion was filed prematurely. The Court need not address the effect of the premature filing because Mr. Steele is not entitled to a sentence reduction on the merits of the motion.

B. **"Extraordinary and Compelling Reason"**

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. _See_ 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. _See_ U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> (A) Medical Condition of the Defendant.--
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> [or]
>> (ii) The defendant is--
>>> (I) suffering from a serious physical or medical condition,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

8

U.S.S.G. 1B1.13, Commentary Application Note 1(A).  Any "other" "extraordinary and compelling reason" may also justify relief.  *Id.* at Commentary Application Note 1(D).  "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  "[A] district court's discretion in this area—as in all sentencing matters—is broad."  *Id.*

*Brooker*[5] provided some guidance on how to interpret § 3582(c)(1)(A).  There, the Second Circuit explained that § 3582(c)(1)(A) speaks to sentence reductions, not just immediate release.  *Id.* at 237 ("A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place.").  The only statutory limit on a court's discretion is that "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reasons."  *Id.* at 238 (citing to 18 U.S.C. § 994(t)) (emphasis in original).  The Second Circuit did not consider the defendant's motion under § 3582(c)(1)(A), rather remanded it to the district court to allow it to "exercise the discretion that the First Step Act gives it."  *Id.* at 238.

---

[5] In *Brooker*, the Second Circuit held that Application Note 1(D) of the United States Sentencing Guidelines—which in general terms placed discretion in defining otherwise undefined "extraordinary and compelling reasons" in the Director of the BOP—"does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act."  *Id.* at 230.  The district court in *Brooker* relied on Guideline § 1B1.13 and denied the defendant's motion. *Id.* at 234.  The Second Circuit concluded that the district court erred because Guideline § 1B1.13 does not apply to compassionate release motions brought by defendants and thus Application Note 1(D) cannot constrain a district court's discretion.  *Id.* at 236.

Since *Brooker*, a handful of courts have applied sentence reductions that did not result in immediate release.  In Mr. Steele's motion, he cites to *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020).  In *Rodriguez*, the district court reduced a defendant's life sentence to a 30-year sentence applying section 3582 and the precedent set in *Brooker*.  There, the defendant had served 20 years of his life sentence.  *Id.* at 308.  The court in *Rodriguez* focused on three reasons for finding extraordinary and compelling reasons.  *Id.* at 310–12.  The first reason was due to the risk the defendant faced during the COVID-19 pandemic because of his underlying health conditions, which were clinical obesity and Type II diabetes.  *Id.* at 310–11.  The second reason was due to the more punitive than intended sentence that the defendant endured during the COVID-19 pandemic. *Id.* at 311. The third reason was due to his "remarkable" rehabilitation that was documented by letters from fellow inmates, family, friends, and 27 members of the prison staff.  *Id.*  These letters outlined with specificity the kind of man the defendant transformed into while serving his sentence.  *Id.* at 311–12.  The letters showed the defendant had tremendous respect for the staff and inmates, he was assigned work assignments reserved for the most responsible and trustworthy inmates, and he helped other inmates rehabilitate (including teaching at least one inmate how to read).  *Id.*  There, the court found the "overwhelming evidence of, not just rehabilitation, but transformation, weigh[ed] in favor of finding extraordinary and compelling reasons" to modify the defendant's sentence.  *Id.* at 313.

Similarly, in *United States v. Quinones*, No. 00-cr-761-1, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021), the defendant—who is a co-defendant in *Rodriguez*—also

sought compassionate release or a sentence reduction.  The court granted the motion for a sentence reduction, reducing the defendant's sentence from life imprisonment to thirty-five years.  *Id.* at *1.  Similar to *Rodriguez*, the district court found extraordinary and compelling reasons justifying a sentence reduction in light of the defendant's underlying health conditions (obesity, a history of high blood pressure, asthma, and hypertension), the more punitive than intended prison sentence due to the COVID-19 pandemic, and the overwhelming evidence of rehabilitation.  *Id.* at *2.  The rehabilitation evidence was presented in the form of letters from family, friends, fellow inmates, and prison officials.  *Id.* at *3.  The district court found particularly powerful a letter from the retired warden of the facility where the defendant was incarcerated, who had never before written a letter on behalf of an inmate.  *Id.*

In *United States v. Pellott*, No. 19-cr-169(VM), 2021 WL 807242 (S.D.N.Y. Mar. 3, 2021), the district court reduced a defendant's custodial sentence from sixty months (which represented the mandatory minimum for the offense he was convicted of) to thirty-six months pursuant to section 3582.  At the time of the court's decision, he had served approximately five months.  *Id.* at *1.  The Court found extraordinary and compelling reasons for the sentence reduction in light of the COVID-19 pandemic's effect on prison conditions, the defendants age (55 years old), the defendant's underlying health conditions (obesity, degenerative joint disease and heart condition), and the defendants rehabilitation (participating in drug treatment and vocational training).  *Id.*  The defendant in *Pellott* recovered from COVID-19 prior to the sentence reduction, which the court noted but found

did not undermine its finding of extraordinary and compelling reasons due to the risk of reinfection.  *Id.* at *3.

Common in the intra-Circuit cases above that contemplate motions for sentence reductions following the COVID-19 pandemic is the fact-intensive inquiry into circumstances justifying such relief.  However, motions to reduce sentences should not automatically be afforded the same consideration that would ordinarily be afforded if the defendant was appearing for sentencing in the first instance.  This is because the general rule is to "*not modify*" an already imposed term of imprisonment unless "extraordinary and compelling reasons" justify otherwise.  18 U.S.C. § 3582(c)(1)(A) (emphasis added).  By announcing the general rule and using limiting qualifiers the exception invoked here, Congress balanced the policy behind finality of criminal proceedings[6] against those defendants who plainly deserve relief.

Here, Mr. Steele argues that the extraordinary and compelling reasons that warrant a sentence reduction are the harsher than intended prison conditions during the COVID-19 pandemic, the increased fear of severe illness or death that

---

[6] The policy of bringing finality to criminal proceedings has been recognized by several courts, primarily in the context of habeas review.  *See Strickland v. Washington*, 466 U.S. 668, 693 (1984) (identifying the finality of criminal proceedings to be of "profound importance . . . ."); *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) ("The reasons for narrowly limiting relief under § 2255-a respect for the finality of criminal sentences, . . . ."); *United States v. Derry*, No. 3:97-cr-00048(3)(MPS), 2015 WL 3407924, at *4 (D. Conn. 2015) (denying defendant's request for reconsideration of sentence relying on rehabilitation evidence after he already had a sentence reduction pursuant to § 3582, stating that "[a]allowing such a circumstance to occasion judicial revisiting of a sentence would open the doors to sentence modifications in a wide range of changed circumstances and would undermine the policy of sentencing finality embodied in Section 3582 and Rule 35 of the Federal Rules of Criminal Procedure.").

he experienced based on the spread of COVID-19 at FCI Schuylkill and his underlying health conditions, and his demonstrated efforts at rehabilitation. The Court does not find that these circumstances individually or in concert constitute extraordinary and compelling reasons warranting a sentence reduction.

With respect to the conditions of confinement, Mr. Steele has not established his period of incarceration was harsher than intended. Mr. Steele presented nothing relating to his conditions of confinement other than what he told his attorney. The evidence presented tends to show he was not denied his basic needs. For example, Mr. Steele was provided access to adequate healthcare evidenced by the fact that the BOP was able to discover his asymptomatic case of COVID-19 and he did not experience severe illness though he had many underlying conditions that would suggest he could have. Mr. Steele was also offered and received a COVID-19 vaccine, which is intended to protect Mr. Steele from risk of future infection or illness. This tends to show that Mr. Steele has been well cared for medically.

In addition, Mr. Steele was provided access to educational and vocational programs during the pandemic, which he was able to successfully complete. This tends to show Mr. Steele received rehabilitative services in addition to meeting his basic needs.

The evidence presented discredits Mr. Steele's claim that harshness of his sentence during the COVID-19 pandemic justifies a finding of extraordinary and compelling reasons. Everyone experienced the fear and isolation Mr. Steele experienced during the COVID-19 pandemic. Unlike Mr. Steele, most were isolated

at their homes without the medical attention and treatment and many without the companionship he had at his disposal.  Everyone was forced to some extent to expose themselves to infection to meet their basic human needs.  While it is probable that Mr. Steele was more afraid of becoming ill during the COVID-19 pandemic, particularly because he was in a prison facility that had many infections and he had medical conditions the CDC found could increase his risk, that fear would logically be balanced against evidence of his access to medical care that was so expert that there were no COVID-19 fatalities at FCI Schuylkill.[7]  Further, Mr. Steele  contracted COVID-19 and despite his risk factors, which  predicted he could have a severe case of COVID-19, Mr. Steele experienced a benign case of COVID-19.  He has not established an "extraordinary and compelling" circumstance justifying a sentence reduction based on his fear of contracting, and the restrictions imposed to keep him safe from, COVID-19.

Finally, while the Court could not have predicted COVID-19, it was aware that individuals living in congregate living settings had a greater risk of contracting infections.  As with other contagious diseases, it was foreseeable that an inmate would have greater exposure to contagion while housed in a correctional facility than they would have were they not to have engaged in the activity which caused them to be imprison.  That is a known and inherent risk assumed by those engaging in criminal activity punishable by a prison sentence.  Mr. Steele has not established

---

[7] *COVID-19*, BOP.Gov, available at: https://www.bop.gov/coronavirus/ (last visited May 24, 2021).

his incarceration during the COVID-19 pandemic was "extraordinary and compelling."

Mr. Steele's efforts at rehabilitation, while admirable and promising, do not constitute an extraordinary and compelling reason alone or in concert with the other arguments raised. The Court is impressed with his continued dedication in staying discipline free, in participating in programs available to him, and in working during his period of incarceration. Nothing in this decision should be interpreted as trying to diminish the great work he has achieved thus far. However, because the other claimed circumstances are unpersuasive and unsupported, his rehabilitation cannot be considered an extraordinary and compelling reason. *Brooker*, 976 F.3d at 238 (citing to 18 U.S.C. § 994(t)) (emphasis in original). Even if the other circumstances were supported, the rehabilitation he has demonstrated and the alleged conditions of confinement are not extraordinary and compelling.

Therefore, the Court finds that Mr. Steele failed to establish extraordinary and compelling reasons that would warrant a sentence reduction.

IV.    **CONCLUSION**

For the reasons above, the Court denies Mr. Steele's motion for compassionate release.

Should Mr. Steele seek a modification a third time, he must first exhaust his administrative remedies and show some markedly appreciable change in circumstances warranting reconsideration, aside from rehabilitation, which alone will not suffice.

**IT IS SO ORDERED.**

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: May 26, 2020**

**16**